All right, thank you. I think we're ready to proceed with argument. Council for appellant, please approach. And counsel, we'd like to thank you on behalf of the court for accepting this case pro bono. We appreciate it. Of course. It's been my pleasure, Your Honor, and I thank the court for the opportunity. All right, if you can introduce yourself and proceed. My name is Joel Wax on behalf of plaintiff appellant Sean Charles Goff. With the court's permission, I'd like to reserve three minutes of my time for rebuttal. All right. The district court granted summary judgment for all five defendants on Mr. Goff's free exercise claim based on multiple errors of law. Starting with the tactical support unit officer defendants, the district court correctly assumed at summary judgment that those officers were responsible for confiscating Mr. Goff's religious items from his cell, but it wrongly concluded that that was insufficient to show their liability under section 1983. That applied too high a standard for personal participation in the constitutional violation. The standard is integral participation, and if, as a reasonable juror, could infer from the evidence in the record these defendants were responsible for confiscating Mr. Goff's religious items, then they were integral participants in depriving him of those items. The district court also relied on Connell v. Leitner for the proposition that a temporary interruption of religious practice cannot violate the Constitution. Connell is no longer good law, and more recent decisions of this Court confirm that such an interruption may substantially burden religious exercise. So, counsel, in this case, you your argument is that the taking of these items substantially burden his free exercise of his religion? That's, yes, that's correct. So tell us how, tell us how there was a substantial burden on his free exercise through the taking of these, these, it's two items, the altar and the medallion. That's correct, a pentacle medallion and an altar cloth. Yeah. Mr. Goff needs both items for religious practices that he partakes in daily as part of his Wiccan faith. Both this Court and numerous other circuits have recognized that depriving a prisoner of religious objects necessary to religious practice constitutes a substantial burden for purposes of our LUPA and free exercise clause claims. The reason I'm a little bit curious about that is that he had the opportunity to replace those and elected not to do so. And so it kind of implies that those weren't really necessary to his, to the exercise of his religion because he opted not to replace them. What do you, what's your response to that? Well, I, I have two responses, Judge Rawlinson. First of all, the sincerity of Mr. Goff's religious beliefs is I think that's not, that's not about sincerity. It's about if you say that it's necessary to practice your religion, but you opt to continue to exercise your religion without those items, then is it necessary to your religion? Well, well, two points, Judge Rawlinson. First of all, it does not have to be necessary to Mr. Goff's religion. I thought that's what you said, that it was necessary for him to practice his religion. Excuse me, it's, it's necessary to the religious practice that he uses the altar cloth and the medallion for. So I direct the court's attention to Jones versus Slate. What's the difference? I don't understand the difference, the point you're making then. Either it's, I mean, if it's necessary for him to exercise his religion, then it's something that's required for him to exercise his religion, correct? Yes, I guess, Judge Rawlinson, let me be clear. He, he is still able to exercise Wicca in other ways, but he cannot practice Wicca in the specific ways that require the altar cloth and the medallion. Does, does that address your question? Let me ask you in maybe a different way, which is what are, what is the relief that your client wants in the case? Well, certainly he would accept an injunction that led to the return of the medallion and the altar cloth. That would be very meaningful relief. I mean, I think the other side, if they had it, would presumably give it back at this point. I don't know if that's going to be possible, whether it exists or not. So what, what do you otherwise want? I, I believe otherwise he would accept monetary damages. Okay, what, what are the monetary damages? That issue has not been litigated before the district court. What, what could they be? The value of this, of the items? I suppose that would be one. And I think he would also seek additional compensatory damages reflecting the years in which he was not able to use these items for his religious practice. Judge, Judge Brass, if there's nothing further on that, I'd, I'd like to go back to your question, Judge Rawlinson, about his supposed ability to replace the medallion and altar cloth, because there is a material dispute of fact about whether that's possible. Mr. Goff's testimony is that according to his sincere religious beliefs, the specific items that were taken, the medallion and altar cloth that he practiced Wicca with for 14 years, had a particular spiritual and religious significance that a new medallion and altar cloth would not. Now there's also a factual dispute about whether he is indeed able to obtain new items. His testimony is that there are substantial burdens to him doing so, both, both financial and non-financial. So what was the reason the items were taken? Well, well, that's a very important point in this case, Judge Brass, that defendants have never identified a legitimate penological interest that would justify confiscating these items. Mr. Goff was approved to have them. What, what if the deprivation here had just been an hour? That, you know, they, they, they took them, maybe they shouldn't have taken them, but they realized that and they returned them an hour later. Would that be a substantial burden? That would, that would present a much closer case, obviously, Judge Brass. Now, at least a panel of this court in Neely versus Shin did recognize that even a momentary interruption of religious practice could be a substantial burden. It really depends on the nature of the religious practice that the plaintiff claims you know, there was uninterrupted Jumu'ah prayer, so even a momentary interruption was a burden. You know, here at a minimum, Mr. Goff uses these items for daily religious practices. And of course, he's been permanently deprived of the items, so the, the question of a temporary deprivation is sort of theoretical. What is the basis for I mean, we have four officers who are alleged to be involved in the taking of the items, what is the, the basis for, for thinking that they were intending to deprive him of the items for some, you know, material period of time? Yes, I think that follows from a couple of pieces of evidence in the record. I mean, this was a search of his cell for dangerous contraband. That's from the defendant's declarations. Why do you take a prisoner's items from his cell during a search for contraband? You're treating them as contraband. Presumably, that's to deprive the prisoner of access to those items. Then, I'm not sure if this is exactly what you were asking, but you know that Mr. Goff witnessed two TSU officers emerging from the cell after the search. They had a bag of items. They were referring to its contents as satanic and devil stuff. Supports the inference that the items were confiscated during the search. Right, I mean, there's, you know, there's some suggestion maybe in the district court opinion that Mr. Goff pursued the wrong people in this case. I don't know if you have a response to that. Yeah, I would disagree with that, Judge Bress. You know, the, the people who were integrally, so the constitutional violation, of course, is confiscating Mr. Goff's religious items and not returning them. The integral participants in that constitutional violation are the officers who were involved with confiscating the items initially from Mr. Goff's cell. These TSU officer defendants were identified by the prison as those officers. And the person who made the decision not to return the items to Mr. Goff, and Mr. Goff's testimony supports the inference that that person was complex major standridge. The court has no additional questions about the free exercise clause claim. I'd like to talk a little bit about the Arlupa claim. The error here is quite straightforward. The district court refused to consider Mr. Goff's well-pled Arlupa claim on the merits at all, only because Mr. Goff had not cited Arlupa in his- And what would that claim, if it's in the case, what would that get you? The Arlupa claim? Yeah, what does it add to your, to your relief or to anything else you would be seeking here? Well, it, it, you're probably right that it largely tracks the free exercise clause claim. But plaintiffs routinely bring free exercise clause and Arlupa claims together. Under the current law of the circuit, Mr. Goff could obtain injunctive relief under Arlupa. He did name all of the defendants in their official capacities. I mean, is that not relief he could obtain just under, you know, the, the free exercise clause itself? That's, that's probably right, Judge Bress. But, you know, if, if he adequately pled both claims, he's entitled to have- But there's a serious, there's a serious question whether he adequately pled the Arlupa claim. There is no, excuse me, Judge Rawlinson, I didn't mean to cut you off. I was going to say, I, I think there's an issue regarding whether he adequately pled the Arlupa claim. Where in the record are you relying on to say that he adequately pled the Arlupa claim? So he, he first cited, well- He, he mentioned the phrase. He first cited Arlupa in his opposition to summary judgment. He, he not only cited it and mentioned the phrase. I mean, he described- Take us to the record. And argued that it was, argued that it was- But is that, is, is that, if he didn't put it in his complaint and first raised it in his opposition, is that adequately raised for purposes of the case? It absolutely is under this Court's decision in Alvarez v. Hill. Alvarez is directly on point here. It says that you do not need to cite Arlupa in your complaint to, to adequately allege the claim. And what you have to do is you have to make out the factual allegations that support the Arlupa claim. Which he did. They're the same ones that support the pre-exercise claim. Okay, let's look at the record where he, what, what page of the record are you relying upon to say he adequately pled the Arlupa claim? Even though I agree with Judge Breast that I'm, I'm not sure that it makes a difference to the outcome of this case. But I'm just curious where you're looking, what language you're looking at. This is at 2 S.E.R. 90A. The defendants did address it in their reply in summary judgment. So I take it your point is, at that point, it's kind of in the case? Yeah. That's correct. And, and that's exactly what Alvarez said. You know, it said, you just have to cite Arlupa at some point before summary judgment. Put defendants on adequate notice that you're proceeding under that legal theory. And it, it relied on the fact that the defendants in Alvarez had responded to the Arlupa claim to show that they had such notice. And that's exactly what we have here. And so what would you have us do? Remand it for the district court to address it? Yes, exactly. Remand for the district court to address the Arlupa claim on the merits in the first instance. Yeah. Even if it's largely duplicative of the free exercise claim? Yes. Yes, Judge Rawlinson. What would be the point to have the district court address it if it's largely duplicative of the free exercise claim? Well, I guess, Judge Rawlinson, this assumes that you agree with me on the free exercise claim. Well, whether we agree or disagree, however we resolve the free exercise claim would probably have the same outcome for the Arlupa claim. Wouldn't you agree? I think that's basically right in this case, largely because, you know, Arlupa is more generous to the religiously observant than the free exercise clause claim is, but mostly at the second step about a legitimate penological interest, which is not an issue here. Defendants have never raised it. But ultimately, I just return to the point that I made to Judge Bress. Plaintiffs routinely bring these two claims together, even though, true, they largely track each other, and Mr. Goff is entitled to have his well-plaid claims considered on the merits. I see I'm into my rebuttal time. Thank you, counsel. We'll hear from the government. May it please the court, I am Suzanne Reed from the Winneke Law Group, representing Appellees Major Sandridge, Sergeant Rep Willett, Forrest, and Jones. We know that on January 15, 2019, an incident command system was initiated and that cell units were searched, including Mr. Goff's. What we don't know is how that search happened, what happened during the search, and who actually did the search and confiscated the items. Counsel, opposing counsel said the defendants were the ones who were identified by the institution as having conducted the search. And, Your Honor, it is correct, based on the record, that there was a subpoena for Deuces Tecum that asked to identify who was involved in the search. It was a compound sentence, but who was involved in the search, who was involved in the confiscation, and who did not return. And the custodian of records, a non-party, just sent a list of names. That itself is not proof that these actual defendants, one, were actually involved in searching the cell, and two, that they confiscated his items. Mr. Goff had a burden to show which individuals did what, and at the summary judgment stage, he failed to do so. Why doesn't it create at least a dispute of fact when there's a response to a subpoena that identifies the people who are defendants here? That's an identifying list of potential defendants by a non-party. What happened at this stage with this particular case is that discovery was completed by the time the motion for summary judgment was done. Mr. Goff had an opportunity to find out who did what and didn't meet that burden. Instead, he said throughout his pleading, even in his opposition for his motion for summary judgment, I saw two unknown male officers coming out. He has nothing else. And so to say it may be one of these because a subpoena that I sent for records gave me a list, that simply is not enough to survive the motion for summary judgment. And in this particular case for 1983 claim, which he did mark in his Second Amendment complaint if that's what he was pleading, he has to show that the actual defendants were involved of his First Amendment violation. So a subpoena response is not enough to survive the motion for summary judgment. Now, in this particular instance. I mean, this was not really the basis for the district court's decision that they just were not involved at all. The district court seemed to assume that they were involved and then held that the actions didn't rise to a level of a substantial burden. Or do you disagree? I'm going to push back a little bit there. I know that counsel said that the district court found that. But I believe the wording of the district court was even assuming these defendants were involved, a fact that both parties seem to not be sure about. No, that's fair. And I'm looking at the same language. But I guess where I'm going with this is that if the argument is they weren't involved at all, or there's just not enough evidence that they were even there on that date and time and place, that doesn't seem to be the ground for the district court's decision. The district court ruled on a different basis. I disagree. Based on my reading, the district court began the analysis of he had to show which defendants were involved and did not. And then changed the analysis, even assuming there wasn't a substantial burden. And so we are agreeing with the analysis of you did not identify that these particular defendants were involved in that First Amendment violation. Are you including Standridge in this too? Or just the four who are alleged to have searched the cell? I would like to talk about Standridge. The court also found that he was not involved and that there was hearsay statements made to Gough from a non-party officer. Now, a review of the record indicates that in this particular case, Gough made different statements as to what happened with that third-party officer, what she told him, and what she said Standridge said. If you look at the actual record, he cites to his interactions with Standridge, but none of that indicates that he actually discussed with Standridge his specific items. Not at all. So it's based on... I thought he says he told Standridge, you're not allowed to take my religious items. In the multiple filings, he says that Standridge came and said basically what's going on. And the conversation is not, I don't take my items. The conversation is, you don't get to tell us what we do or not to do. We're going to send you to the detention unit. So what is your contention with Standridge? That he just did not know what was taken at all? Well, our contention is based on what he has specifically said in his declarations is that he did not order the confiscation of the altar cloth or medallion. It was not shown the altar cloth or medallion by COO Truman or Trowman, spelled different ways in different parts of the record, or any other department officer. I did not order Truman or any department officer to withhold the altar cloth or medallion. I did not make any statements that Plaintiff attributes to me. With him, he is an after-fact person that was not part of the cell search. He's not part of the TSU unit. He is someone that after the defendant, or after Mr. Goff, in this case, was banging on a cell, came down to address that issue. And so the... Why isn't this... I mean, I see his declaration. He clearly had some interaction with Goff on that day. Interaction doesn't mean confiscation or withholding. Well, I mean, Goff has come forward and said he knew that these were my items. I told him I had religious items. And there's a difference of recollection on that interaction. That's even separate from the Trowman. But why isn't that genuinely disputed? And again, I would like to know where in the record he said that he specifically told... He assumed Standridge is acting based on retaliation. That's part of his due process claim that was... But I don't know in the record, and it could be that I have not seen it, where he specifically says to Standridge, my religious items are missing. I want them back. That is missing from the record. It's the conversation with Truman who's outside. But let's talk about that conversation with Truman, because I think the issue here is that for the summary judgment, the lower court looked at the entire record, which is permissible under the rules for summary judgment. So what happened? What are we talking about? So the grievance complaint is about these missing items, including non-religious items. The Second Amendment complaint, he says, came back, there's these two missing items. And then Truman returned 15 minutes later and was told she was able to locate the cloth and could not give it back to me, it orders the complex major. When asked, she shrugged, reiterated on orders. It's not a direct conversation with the complex major. When I arrived at the Buckley unit, I discovered then I was missing these items. He also indicates the fact that, well... So, I mean, what is your... I'm just having trouble with the position here in the sense that is your... I mean, we know items were taken from him, but the argument is that nobody at the time appreciated that, even though that's what the whole case is about. That's what I'm trying to... I don't follow. I mean, I'm looking at his deposition testimony where he says, in reference to standards, the discussion, that he says, you don't tell... He says the major starts walking back and forth, like he's a drill sergeant in boot We tell you. And I tell him that you're not allowed to take my religious items. I've shown you my approval forms. And he says, you don't get to tell us what we take. We tell you. So that's his testimony. I have no idea if it's correct or not. And the standard seems to dispute that. But why is this point not genuinely disputed? Because the lower court looked at the other times that he referenced his conversation with that major, which was in the Second Amendment complaint, in the response to the opposition, in his statement of facts, where he does not mention that he told that to the major. So he's allowed to look at that. Additionally, based on his own statements, he makes conflicting statements as to what actually happened with the cloth and medallion. So at one point, in Plato's response objecting to the motion for the stay of discovery, which is in document 62, which when I looked, it was not part of what was sent up to the Supreme Court, which can be supplemented. He mentions that Officer Truman told me that she gave it, the property, to Officer B. Rodriguez to put in my excessive property and contraband box, which is something that he admits in other places where he's talking about that. So that's Officer Truman, Officer Rodriguez, not Standridge, withholding the items. And then additionally, he mentions again in his declaration against the summary judgment, defendants did unlawfully take and never return my religious items, nor did the religious items ever make it to my contraband box, the property Officer B. Rodriguez, as Truman said. That's on 2 SER 251. So there's conflicting statements as to who had what and when. These defendants, though, their statement is, we don't know what happened. We know a search occurred. We don't know what happened. So as the trial court or the district court said, even assuming the confiscation occurred in this particular case. Is there any doubt that the confiscation occurred? I mean, we have to, we're questioning the very basic premises of this whole case, which is something was taken from him. Do you dispute that? No, I, the record shows that these items are lost. They're not there. They weren't in his room. I take it if your client had them or if the prison had them, they would have been returned. I cannot avow, but based on the affirmations of what are by the officers in this case, they have no knowledge of it. They don't have possession. Why were they taken if he had the ability to possess them? That would be pure speculation. At this point, there is reference in the record that he says that his medallion was taken along with a two-pronged plug for being altered. There is protocol as if there's things taken as part of comp terrain if they found during the search that wasn't followed. That's completely negligent if that's what occurred in this case. Does that arise to a First Amendment violation? No, not according to the case law in the Ninth Circuit. I do want to point out that as far as the burden aspect of this that opposing counsel mentioned, the lower court got it correct that there wasn't a substantial burden by these defendants in this case with the loss of these items. Mr. Goff fully admits that he's able to continue practicing his religion in this since then. Yes, there are sentimental values to these two items. I think it's more than that. I mean, you know, it's a religious value. So I don't know that it's just sentimental. The way that he described it, I think it was spiritual, magical. There's value to him. But can he continue still practicing? Are they forcing him to do something that's against his religion or not? They're absolutely not, especially not these defendants. Mr. Goff even mentions that after this incident, he did not have contact with them. And again, it mentions that he thought that it was part of the property that was lost when his other property was lost. So for these particular defendants, they did not substantially burden this defendant regarding the loss of the property. I also want to point out that as far as the Raralupa claim that was brought up by counsel, Alvarez is different. Alvarez, that particular case, the court found that the opposing party admitted that this was a Raralupa case and that there was the reference of something being substantially burdened to his religion and that he pled it even greater than necessary. But how those officials were doing that, that was not pled here. And the only time it's brought up is in the response to the motion for summary judgment. But if you actually look at what he says, citing the statute is not enough. Saying that he had to modify. Okay. You had to modify. And that there's 14 years of stored magical protective wording in his loss. And that's so he had to regulate his practice. I think the question on this, you know, under Alvarez is basically, at summary judgment, is there enough notice given? And when the defendants here responded to the Raralupa claim in the summary judgment reply, why are we faulting him for not including it in the complaints? I mean, I could, Alvarez would seem to govern that. I don't believe so, Your Honor, because in this particular record in front of us, the defendants throughout all of their filings have said, even in their answer, this is not a Raralupa claim. Well, what prejudice is it? I mean, it's not clear what it even adds to the case. So what difference would it have made if the district court had, I mean, presumably the district court would have looked at this Raralupa claim, and based on what he said already, would have ruled in your favor? That's true. If there's going to be a finding of substantial burden under ETH, that there's going to be a finding of substantial burden. We, of course, contest that there's not. But then the outcome of if it's a Raralupa claim, that's statutory versus a constitutional outcome. Who actually has the ability to provide an injunction of relief? That's a whole other ballgame. So that's how it changes. But whether or not there's a substantial burden, Your Honor, you're correct. That part is still there. And as far as this actual record, counsel's right that we did not even get to the pedagogical issues of this case because, as the lower court found, even assuming it's these defendants, which Goff had the burden, did not prove throughout his time before the motion for summary judgment, there was no substantial burden because he was still able to practice. And these defendants did not cause him not to practice after this event. What happened here, unfortunately, was a loss. Is this the right place for this part of the analysis? I mean, you know, the idea that you would take that somebody could still practice their religion in other ways, or at least sufficiently, is that really part of the substantial burden question? Or is it really more part of a defense to say what we did, you know, had a legitimate penological justification, and it would maybe go into that as part of that argument? And I think I might be misunderstanding your question. So let me know. Well, let me restate it. I mean, I guess the question to me is, at the substantial burden stage, are we really to evaluate the case in the way that you're asking? Whereas, does this issue about whether he could still practice his religion come in more as part of defending the action based on the prison, the need for the prison to have done what it did? And I'm not trying to split the answer, but I think it actually comes under both. Because if there's a substantial burden, you have to see what these actual defendants did regarding this defendant and his religious rights. And did they cause him to not practice his religion in a certain way, based on their actions, or cause him to engage in something he was forbidden to? Aren't we just making a judgment about his religion? I mean, he says these items are sacred to him. And so, and lots of people have items that are sacred to them in their own religions. And it's a tough thing to have to go and say, well, it's actually not as important to you as you claim. I agree, Your Honor. But there's at least a threshold issue that he has to make a showing of the substantial burden regarding these particular defendants, which he failed to do. What does substantial burden mean in terms of pre-exercise jurisprudence? It has to mean something. So how does one establish that there's a substantial burden? What does that mean in terms of pre-exercise? What do the cases say? What is a substantial burden? For instance, I mean, if someone has a Bible, and they've put notes in the Bible, and it's something that they use to study and to perform their religious exercises or their religious study, and that Bible is taken, would that be a substantial burden on the pre-exercise of that person's religion? I think it depends on the facts of the case. And I'm not trying to not answer your question. It depends on what has occurred. So did this coerce the individual to act contrary to their beliefs or exert substantial pressure to modify the behavior and violate the beliefs? So not having a specific item that is important to you, that you've prayed to, that you've meditated to, losing that, especially through negligence, is not a substantial burden created on that defendant in this particular case. There are obviously sentimental value to this. It's more than that. It's religious value. It's his religious value. But as far as the facts of this case and the cases that say that there's not a substantial burden, the defendant's actions, regulations, policies did not cause that substantial burden, causing that modification. There is a lot more that can still be done. We really don't know from this record, do we, whether the government is claiming there was a penological reason for doing what was done here. Is that right? That is correct, Your Honor. They did not get to the second portion because the district court found, even assuming it's the defendant, there wasn't a substantial burden. So under the First Amendment cases, it is whether or not there's the substantial burden, if that's found, then whether or not there was the penological interest and you apply the Turner factors. We didn't get that far in this case, based on Goff not meeting his burden. And so we respectfully request that the court affirm the motion for summary judgment, unless the court has any other questions for me. It appears not. Thank you, counsel. Thank you, Your Honor. The legitimate penological interest question, it's not just that the district court did not reach that step in the analysis. There's never been an assertion by these defendants that there was one, not before this court, and I don't believe before the district court either. This opposing counsel mentioned something about the medallion being altered. This is the first time I've heard that argument made, and there's at least a dispute of fact. Mr. Goff's testimony is that it was not altered. I'd like to talk about the substantial burden questions that came up at the end just now. Mr. Goff's ability to practice WICA in other ways is not relevant to that step of the analysis. So what do the cases say about what constitutes a substantial burden? What's your strongest case authority that you rely upon? I was just about to get there, Judge Rawlinson. It's Jones v. Slade. So Jones explains how this first step of the analysis is supposed to go. It says that the first thing the court has to determine, the crucial question, is how to conceive of the religious practice at issue. And what Jones says is that it should be conceived of essentially as the plaintiff claims it. So in Jones, the plaintiff claims that being denied two books by Elijah Muhammad substantially burdened his ability to partake in his religious practice of reading a central nation of Islam texts during Ramadan. The district court had conceived of it more broadly. It said the religious practice is just observing Ramadan. And this court held that that was reversible error. The religious practice in question was the more narrow one identified by the plaintiff. I see that I'm out of time. Just before you sit down, the— Of course, Judge Brest. Your opposing counsel, you know, at least on the four officer defendants, said basically the subpoena is not sufficient to create a dispute of fact. What's your response to that? So I'd like to make two points about that. First, this is the first time that defendants have argued, to my knowledge, that the subpoena is somehow not competent evidence. You know, Mr. Goff asked the prison specifically for the names of the officers involved with searching his cell, with confiscating his religious items. The prison responded without qualification that it was these defendants plus another one, CO2 Castro Hermosillo. There were ways the prison could have determined that. There is normally surveillance video of the housing units, normally a report about search and confiscation of items. And then one other thing opposing counsel said was that it was Mr. Goff's burden to show which individuals did what at summary judgment. That's not actually the law in this circuit. Rutherford and Liston recognized that even absent that kind of definitive evidence, there may be a jury question about each defendant's participation. Counsel, in Jones, it says that a substantial burden exists when the state places substantial pressure on an adherent to modify his behavior and to violate his beliefs. Agree. How is that standard met here? How are his beliefs violated? It's the behavior, I think, Judge Rawlinson. It's an and. Substantial pressure on an adherent to modify his behavior and to violate his beliefs. So how was he pressured to violate his beliefs? Mr. Goff believes that he needs to partake in religious practices and rituals, that he needs these two items to partake in. Without the items, he cannot partake in the religious rituals that this wicked faith requires. Does that violate his beliefs, then? Yes, because he believes that he needs to partake in the rituals, and he cannot. All right. Thank you, counsel. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the Court. The final case on calendar, Hassan v. Wingfield, has been submitted on the briefs. And again, counsel, we thank you for accepting this case pro bono. Truly my pleasure, Judge Rawlinson. Thank you. That completes our calendar for the morning. We are on recess until 9.30 a.m. tomorrow morning.
judges: RAWLINSON, SMITH, BRESS